IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ACCESS NOW, INC., on behalf of its members; R. DAVID NEW; and LISA FRAZIER , <br><br><br> Plaintiff, <br><br> v. <br><br> ALLEN EDMONDS CORPORATION <br><br> Defendant. | Civil Action No. <br><br> COMPLAINT FOR INJUNCTION |

**COMPLAINT FOR PERMANENT INJUNCTION**
**REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF**
**DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Access Now, Inc., R. David New, and Lisa Frazier (collectively "Plaintiffs") seek a permanent injunction requiring a change in Allen Edmonds Corporation's ("Defendant" or "Allen Edmonds") corporate polices to cause Allen Edmonds' website to become, and remain, accessible. In support thereof, Plaintiffs assert as follows:

**INTRODUCTION**

1.      "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ.,    Labor    &    Pensions,    at    3    (May    14,    2013),    *available    at* https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf (last accessed July 5, 2017).

2.      Allen Edmonds is an upscale shoe manufacturing and retail company. Allen Edmonds designs, manufactures, and sells footwear, clothing, and accessories for men. Its products are offered online at www.allenedmonds.com ("Website") for purchase and delivery, and through their 52 retail store locations.

3.      Allen Edmonds' Website offers many services in addition to its online marketplace. Consumers can create an account, track orders, purchase and check balances of gift cards, chat with customer service, and locate retail stores. Consumers can also receive additional discounts through the Website and access information about proper shoe care and fit.

4.      Unfortunately, Allen Edmonds denies approximately 7 million[1] Americans who are visually impaired access to its Website's goods, content, and services because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

5.      Screen reader programs convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, and education have become commonplace.

6.      Plaintiffs bring this civil rights action against Allen Edmonds Corporation  to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal to those provided to nondisabled persons; (3) provide auxiliary

---

[1] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed July 14, 2017).

aids and services—including electronic services for use with a computer screen reading program— where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

7.      By failing to make its Website available in a manner compatible with computer screen reading programs, Allen Edmonds, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services-all benefits it affords nondisabled individuals-thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress

8.      Because Allen Edmonds' Website has never been accessible and because Allen Edmonds does not have, and has never had, a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiffs invoke 42 U.S.C. § 12188(a)(2) and seek a permanent injunction requiring:

a)   that Allen Edmonds retain a qualified consultant acceptable to Plaintiffs ("Mutually Agreed Upon Consultant") and who shall assist it in improving the accessibility of its Website so it complies with version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0 AA");[2]

b)   that Allen Edmonds work with the Mutually Agreed Upon Consultant to ensure that all employees involved in website development and content development be given web accessibility training on a periodic basis calculated to achieve ongoing compliance with WCAG 2.0 AA;

c)   that Allen Edmonds work with the Mutually Agreed Upon Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether

---

[2]The Department of Justice has utilized the WCAG 2.0 Standards as a benchmark for satisfying the requirements of 42 U.S.C. §§ 12182(a) and 12182(b)(2)(A)(iii). The WCAG 2.0 Guidelines provide "recognized voluntary international guidelines for Web accessibility," *see, e.g.*, Department Commentaries, 75 Fed. Reg. at 43465, and the Department of Justice, through myriad enforcement actions, has consistently used the WCAG 2.0 Level AA Standards to ensure the full and equal enjoyment of websites for persons with disabilities.

Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis;

d)   that Allen Edmonds work with the Mutually Agreed Upon Consultant to perform end-user accessibility/usability testing on a periodic basis with said testing to be performed by individuals with various disabilities to evaluate whether Defendant's Website continues to comply with WCAG 2.0 AA on an ongoing basis; and,

e)   that Allen Edmonds work with the Mutually Agreed Upon Consultant to create an accessibility policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems.

9.      Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

10.     The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11.     Allen Edmonds purposefully targets and otherwise solicits business from Pennsylvania residents through its Website. Because of this targeting, it is not unusual for Allen Edmonds to conduct business with Pennsylvania residents. In fact, the opposite is true: Allen Edmonds clearly does business over the Internet with Pennsylvania residents, having entered into

4

contracts with Pennsylvania residents that involve the knowing and repeated transmission of computer files over the Internet.

12.     Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiffs Frazier's claims occurred.

<u>**PARTIES**</u>

13.     Plaintiff Access Now is a non-profit organization that provides advocacy services on behalf of blind and other disabled individuals who are members of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Access Now has members representing 47 states, including residents of Pennsylvania.

14.     One of Access Now's primary purposes is to assure that public accommodations are accessible to and useable by its members, and to assure that its members are not discriminated against because of their disabilities, or denied the benefits of the services, programs, and activities of public accommodations.

15.     Access Now furthers this mission in a variety of ways, including seeking compliance with the ADA through education efforts to correct violations when found, and when necessary and appropriate, in litigation to require persons and entities in violation of the ADA to comply with the Act.

16.     Access Now also devotes significant resources to raise awareness and increase opportunities for people with disabilities. For example, Access Now and its members host and/or sponsor events such as "Lights Out," a dining in the dark experience. Access Now and its members also host and/or sponsor Biz-Ability Luncheons recognizing organizations and individuals who

have improved awareness about people living with disabilities, enhanced independent living, and developed assistive technologies, among other important contributions.

17.     Access Now has strongly advocated for access to the online goods, content, and services that various industries make available via the Internet, but which are often incompatible with the screen reader programs, and other assistive technology, its members use. For example, Access Now filed suit against HSBC North America Holdings, Inc., alleging the bank's website was not compatible with screen reader software, thus blocking blind and visually impaired users from fully accessing the full range of personal online banking services available to sighted users. (*Frazier, et al. v. HSBC North America Holdings, Inc.*, No. 2:16-cv-01665-AJS (W.D. Pa. Nov. 2, 2016) (Doc. No. 1)). In addition to financial lending, Access Now has pursued increased accessibility to the online content and services offered by the hospitality industry (*Frazier, et al. v. Omni Hotels Management Corporation*, No. 2:17-cv-00012-AJS (W.D. Pa. Jan. 4, 2017) (Doc. No. 1)), and online retail industries (*Depina, et al. v. Keurig Green Mountain, Inc.*, No. 1:17-cv-10236-NMG (D. Mass. Feb. 13, 2017), among others.

18.     Plaintiff New is, and at all times relevant hereto, has been a resident of the State of Florida. Plaintiff New is, and at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*. Plaintiff New is a member of and serves as President of Plaintiff Access Now.

19.     Plaintiff Frazier is and, at all times relevant hereto, has been a resident of Pennsylvania. Plaintiff Frazier  is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq*.

6

20.     Defendant Allen Edmonds Corporation is a Wisconsin corporation with its principle place of business located at 201 East Seven Hills Road, Port Washington, Wisconsin 53074. Defendant is a retailer that engages in repeated commercial transactions through its Website. Allen Edmonds' Website is a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO ALL CLAIMS

21.     While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

22.     Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

**I.     Allen Edmonds' Online Content**

23.     Allen Edmonds' Website allows consumers to browse and purchase products available for home delivery. The Website provides detailed product information, complete with photographs and product descriptions.

24.     Consumers may use the Website to connect with the Defendant on social media, using sites such as Facebook, Instagram, Twitter, and YouTube.

25.     The Websites also include important information regarding Delivery and Return Policies, Terms of Use, Privacy Policies, and Security Policies.

**II.     Harm to Plaintiffs**

26.     Plaintiff Frazier, motivated by her personal interests and as an advocate on behalf of disabled Americans, has attempted to use Allen Edmonds' Website. Unfortunately, because of Allen Edmonds' failure to build its Website in a matter that is compatible with screen reader programs, she is unable to understand, and thus is denied the benefit of, much of the content and services she wishes to access or use.

27.     Ms. Frazier attempted to access the Website with the same screen reader program she uses to browse the Internet, but found it to be largely unusable due to various accessibility barriers. For example, these barriers made it considerably difficult for Ms. Frazier to locate information regarding Allen Edmonds' Return Policy, Contact Information, and how to order products in different colors.

28.     Plaintiff New has visited Allen Edmonds' Website. Unfortunately, because of Allen Edmonds' failure to build its Website in a matter that is compatible with screen reader programs, he is unable to understand, and thus is denied the benefit of, much of the content and services he wishes to access or use.

29.     Mr. New has attempted to access the Website with the same screen reader programs he uses to browse the Internet, but found them to be largely unusable due to various accessibility barriers. For example:

        (a)     Multiple buttons on the Website are missing proper labels sufficiently describing their action to a screen reader user.

(b)     As a result of the missing labels, Mr. New does not know what happens after selecting or "clicking on" a button.

(c)     These unlabeled buttons make it difficult to find information and complete transactions.

30.     As a result of visiting Allen Edmonds' Website and from investigations performed on their behalf, Plaintiffs are aware the Website include at least the following barriers that deny individuals with visual impairments access to Allen Edmonds' Website:

(a)     A text equivalent for every non-text element is not provided;

(b)     Alternatives that present information in a way that sight or hearing impaired visitors can use is not provided for audio-only or video-only pre-recorded media presentations;

(c)     Media presentations do not include corresponding alternatives for site impaired users, like an audio description of video content or a text equivalent;

(d)     Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

(e)     Color is used as the only visual means of conveying meaning;

(f)     Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(g)     Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function depends on the path of the user's movement;

(h)     If the content enforces a time limit, the user is not always able to extend, adjust or disable it unless the time limit is part of a real time activity or would invalidate the activity;

(i)      Web pages lack titles that describe their topic or purpose;

(j)      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(k)      Changing the focus of any user interface component may automatically cause a change of context;

(l)      Changing the setting of any user interface component may automatically cause a change of context unless the user has been informed before using the component;

(m)      Labels or instructions are not always provided when content requires user input;

(n)      In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(o)      The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

31.      These barriers, and others, have denied Plaintiffs full and equal access to all of the services the Website offers, and now deter them from attempting to use the Website. Still, Plaintiffs would like to, and intend to, attempt to access Allen Edmonds' Website in the future. Plaintiffs' disabilities, and the challenge of traveling to and shopping in traditional brick-and-mortar retailers as a result of them, make it particularly likely they will return to the Website in the future to purchase goods from the comfort of their homes, or testing the Website for compliance.

32.     If the Website were accessible, *i.e.* if Allen Edmonds removed the access barriers described above, Plaintiffs could independently shop for and research products via Allen Edmonds' Website.

33.     Though Allen Edmonds has centralized policies regarding the maintenance and operation of its Website, Allen Edmonds has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

34.     The law requires that Allen Edmonds reasonably accommodate Plaintiffs' disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

35.     Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of website comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited July 5, 2017).

36.     Plaintiffs have been, and in the absence of an injunction will continue to be, injured by Allen Edmonds' failure to provide its online content and services in a manner that is compatible with screen reader technology.

### III.     Allen Edmonds' Knowledge of Website Accessibility Requirements

37.     Allen Edmonds has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

38.     Indeed, as the Disability Rights Section reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts, it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

### IV.     The Parties have No Administrative Remedies to Pursue.

39.     There is no DOJ administrative proceeding that could provide Plaintiffs with Title III injunctive relief.

40.     While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiffs with relief.

41.     Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

42.     Resolution of Plaintiffs' claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of

the courts, *e.g.* (a) whether Allen Edmonds offers content and services on its Website, and (b) whether Plaintiffs can access the content and services.

## SUBSTANTIVE VIOLATION
### (Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)

43.     The assertions contained in the previous paragraphs are incorporated by reference.

44.     Allen Edmonds' Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

45.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Allen Edmonds does not provide Plaintiffs with full and equal access to its Website, it has violated the ADA.

46.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. Id.; see also MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

47.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

48.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making

visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions.  28 C.F.R. §§ 36.303(b)(2), (4).

49.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.  28 C.F.R. §§ 36.303(c)(1)(ii).

50.     By failing to provide its Website's content and services in a manner that is compatible with auxiliary aids, Allen Edmonds has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Allen Edmonds' Website;

(b)     affording individuals with visual disabilities access to Allen Edmonds' Website that is not equal to, or effective as, that afforded others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)     denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)     failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

51.     Allen Edmonds has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals with visual

disabilities the benefits of those Website, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

52.     Allen Edmonds has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

53.     Making its online goods, content, and services compatible with screen reader programs does not change the content of Allen Edmonds' Website or result in making the Website different, but rather enables individuals with visual disabilities to access the Website Allen Edmonds already provides. See MIT Statement of Interest, p. 20; Harvard Statement of Interest, p. 20.

54.     Allen Edmonds' ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiffs and other individuals with visual disabilities.

55.     Plaintiffs' claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

56.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiffs request relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for:

1.      A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably

calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

2.      A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504 (a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 8 above.

3.      Payment of costs of suit;

4.      Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

5.      The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: July 21, 2017                    Respectfully Submitted,

/s/ Benjamin J. Sweet
Benjamin J. Sweet (PA Bar No. 87338)
bsweet@carlsonlynch.com
R. Bruce Carlson (PA Bar No. 56657)
bcarlson@carlsonlynch.com
Kevin W. Tucker (PA Bar No. 312144)
ktucker@carlsonlynch.com

**CARLSON LYNCH SWEET KILPELA & CARPENTER, LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Phone: (412) 322.9243
*Counsel for Plaintiffs*