IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ACCESS NOW, INC., on behalf of its members; R. DAVID NEW; and LISA FRAZIER,<br><br>                  Plaintiffs,<br>         v.<br><br>ALLEN EDMONDS CORPORATION,<br><br>                  Defendant. | Civil Action No. 2:17-cv-00959 |
| RACHEL GNIEWKOWSKI,<br><br>                  Plaintiff,<br>         v.<br><br>ALFRED DUNNER, INC.,<br><br>                  Defendant. | Civil Action No. 2:17-cv-00960 |

**AMENDED COMPLAINT FOR PERMANENT INJUNCTION
REQUIRING CHANGES TO CORPORATE POLICY AND THE ELIMINATION OF
DIGITAL ACCESS BARRIERS PURSUANT TO 42 U.S.C. § 12188(a)(2)**

Rachel Gniewkowski ("Plaintiff") seeks a permanent injunction requiring a change in Alfred Dunner, Inc.'s ("Defendant" or the "Alfred Dunner") corporate polices to cause Defendant's website to become, and remain, accessible. In support thereof, Plaintiff asserts as follows:

**INTRODUCTION**

1.      "Being unable to access websites puts individuals at a great disadvantage in today's society, which is driven by a dynamic electronic marketplace and unprecedented access to information." U.S. Dep't of Justice, Statement of Eve L. Hill before the Senate Comm. on Health, Educ.,    Labor    &    Pensions,    at    3    (May    14,    2013),    *available    at*

https://www.justice.gov/iso/opa/ola/witness/05-14-13-crt-hill-testimony-re-the-americans-with-disabilities-act-and-entertain.201372314.pdf (last accessed December 29, 2017).

2.      Alfred Dunner is a retailer of women's clothing. Alfred Dunner sells its products online at www.alfreddunner.com ("Website"), at its outlet stores, and in national department stores like Macy's and JC Penney's. Consumers may use the Website to arrange for home delivery.

3.      In addition to selling products in its online marketplace, Alfred Dunner's Website allows consumers to create personal accounts, contact customer service, get 20% off by joining Alfred Dunner's email mailing list, and access important legal information like Alfred Dunner's Privacy and Shipping and Return Policies.

4.      Unfortunately, Alfred Dunner denies approximately 7 million[1] Americans who are visually impaired access to its Website's goods, content, and services because the Website is largely incompatible with the screen reader programs these Americans use to navigate an increasingly ecommerce world.

5.      Screen reader programs convert a website's text, buttons, links, and text fields to audio. Without screen reader programs, blind or visually impaired individuals cannot independently access the Internet, where everyday activities such as shopping, banking, education, and meal delivery have become commonplace.

6.      Plaintiff brings this civil rights action against Alfred Dunner to enforce Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("Title III"), which requires, among other things, that a public accommodation (1) not deny persons with disabilities the benefits of its services, facilities, privileges and advantages; (2) provide such persons with benefits that are equal

---

[1] Perkins School of the Blind (Watertown, MA), *America's Blind Spot: What's Preventing Us From Including Those Who Are Blind in the Sighted World?*, p. 5, *available at* http://www.perkins.org/sites/default/files/perkins-americas-blind-spot-ebook.pdf (last accessed December 29, 2017).

to those provided to nondisabled persons; (3) provide auxiliary aids and services—including electronic services for use with a computer screen reading program—where necessary to ensure effective communication with individuals with a visual disability, and to ensure that such persons are not excluded, denied services, segregated or otherwise treated differently than sighted individuals; and (4) utilize administrative methods, practices, and policies that provide persons with disabilities equal access to online content.

7.     By failing to make its Website available in a manner compatible with computer screen reading programs, Alfred Dunner, a public accommodation subject to Title III, deprives blind and visually-impaired individuals the benefits of its online goods, content, and services, all benefits it affords nondisabled individuals, thereby increasing the sense of isolation and stigma among these Americans that Title III was meant to redress.

8.     Because Alfred Dunner's Website has never been accessible and because Alfred Dunner does not have, and has never had, a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff invokes 42 U.S.C. § 12188(a)(2) and seeks a permanent injunction requiring:

    a)  that Alfred Dunner retain a qualified consultant acceptable to Plaintiff ("Web Accessibility Consultant") who shall assist it in improving the accessibility of its Website, including third party content and plug-ins, so the goods and services on it may be equally accessed and enjoyed by individuals with vision related disabilities;

    b)  that Alfred Dunner work with the Web Accessibility Consultant to ensure that all employees involved in website and content development be given web accessibility training on a biennial basis, including onsite training to create accessible content at the design and development stages;

    c)  that Alfred Dunner work with the Web Accessibility Consultant to perform an automated accessibility audit on a periodic basis to evaluate whether Alfred Dunner's Website may be equally accessed and enjoyed by individuals with vision related disabilities on an ongoing basis;

    d)  that Alfred Dunner work with the Web Accessibility Consultant to perform end-user accessibility/usability testing on at least a quarterly basis with said testing to

3

be performed by humans who are blind or have low vision, or who have training and experience in the manner in which persons who are blind use a screen reader to navigate, browse, and conduct business on websites, in addition to the testing, if applicable, that is performed using semi-automated tools;

e)   that Alfred Dunner incorporate all of the Web Accessibility Consultant's recommendations within sixty (60) days of receiving the recommendations;

f)   that Alfred Dunner work with the Web Accessibility Consultant to create a Web Accessibility Policy that will be posted on its Website, along with an e-mail address and toll free phone number to report accessibility-related problems;

g)   that Alfred Dunner directly link from the Website's  homepage, a statement that indicates that Defendant is making efforts to maintain and increase the accessibility of its Website to ensure that persons with disabilities have full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of the Defendant through the Website;

h)   that Alfred Dunner accompany the public policy statement with an accessible means of submitting accessibility questions and problems, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

i)   that Alfred Dunner provide a notice, prominently and directly linked from the Website's homepage, soliciting feedback from visitors to the Website on how the accessibility of the Website can be improved. The link shall provide a method to provide feedback, including an accessible form to submit feedback or an email address to contact representatives knowledgeable about the Web Accessibility Policy;

j)   that Alfred Dunner provide a copy of the Web Accessibility Policy to all web content personnel, contractors responsible for web content, and Client Service Operations call center agents ("CSO Personnel") for the Website;

k)   that Alfred Dunner train no fewer than three of its CSO Personnel to automatically escalate calls from users with disabilities who encounter difficulties using the Website. Alfred Dunner shall have trained no fewer than 3 of its CSO personnel to timely assist such users with disabilities within CSO published hours of operation. Alfred Dunner shall establish procedures for promptly directing requests for assistance to such personnel including notifying the public that customer assistance is available to users with disabilities and describing the process to obtain that assistance;

l)   that Alfred Dunner modify existing bug fix policies, practices, and procedures to include the elimination of bugs that cause the Website to be inaccessible to users of screen reader technology;

    m) that Plaintiff, their counsel and its experts monitor each Website for up to two years after the Mutually Agreed Upon Consultant validates the Website is free of accessibility errors/violations to ensure Alfred Dunner has adopted and implemented adequate accessibility policies. To this end, Plaintiff, through her counsel and its experts, shall be entitled to consult with the Web Accessibility Consultant at their discretion, and to review any written material, including but not limited to any recommendations the Website Accessibility Consultant provides Alfred Dunner.

9.    Web-based technologies have features and content that are modified on a daily, and in some instances an hourly, basis, and a one time "fix" to an inaccessible website will not cause the website to remain accessible without a corresponding change in corporate policies related to those web-based technologies. To evaluate whether an inaccessible website has been rendered accessible, and whether corporate policies related to web-based technologies have been changed in a meaningful manner that will cause the website to remain accessible, the website must be reviewed on a periodic basis using both automated accessibility screening tools and end user testing by disabled individuals.

## JURISDICTION AND VENUE

10.    The claims alleged arise under Title III such that this Court's jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

11.    Alfred Dunner purposefully solicits business or otherwise derives substantial revenue from the residents of this District through its Website. Because of this targeting, it is not unusual for Alfred Dunner to conduct business with residents of this District. In fact, the opposite is true: Alfred Dunner clearly does business over the Internet with residents of this District, having entered into contracts with them that involve the knowing and repeated transmission of computer files over the Internet. *See Gniewkowski v. Lettuce Entertain You*, Order, ECF No. 123 (W.D. Pa Apr. 25, 2017) *clarified by* Order of Court, ECF No. 169 (W.D. Pa. June 22, 2017) (Judge Schwab) (The court exercised personal jurisdiction over an out-of-forum defendant for claims its website is

inaccessible to a visually disabled resident of the forum state.); *see also Access Now Inc. v. Otter Products, LLC*, Case No. 1:17-cv-10967-PBS, 2017 WL 6003051 (D.Mass. Dec. 4, 2017) ("*Otter Products*") (exercising personal jurisdiction over forum-based plaintiff's website accessibility claims against out-of-forum website operator).

12.     Venue in the Western District of Pennsylvania is proper under 28 U.S.C. § 1391(b)(2) because Plaintiff Gniewkowski attempted to access Defendant's Website from within this District. In other words, this is the judicial district in which a substantial part of the acts and omissions giving rise to Plaintiff Gniewkowski's claims occurred. *See Otter Products*, 2017 WL 6003051, *5 ("Although the website may have been created and operated outside of the district, the attempts to access the website in Massachusetts are part of the sequence of events underlying the claim. Therefore, venue is proper in this District. *See Siegel v. Homestore, Inc.*, 255 F. Supp. 2d 451, 456 (E.D. Pa. 2003) (finding venue proper when all defendant's business was conducted entirely over the Internet).").

## PARTIES

13.     Plaintiff Gniewkowski is and, at all times relevant hereto, has been a resident of this District. Plaintiff Gniewkowski is and, at all times relevant hereto, has been legally blind and is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2) and the regulations implementing the ADA set forth at 28 CFR §§ 36.101 *et seq.*

14.     Defendant Alfred Dunner, Inc., is a New York corporation with its principle place of business located at 1411 Broadway, New York, New York, 10018. Defendant is a retailer that facilitates repeated commercial transactions through its Website. Alfred Dunner's Website is a public accommodation pursuant to 42 U.S.C. § 12181(7).

## FACTS APPLICABLE TO PLAINTIFF'S CLAIMS

15.    While the increasing pervasiveness of digital information presents an unprecedented opportunity to increase access to goods, content, and services for people with perceptual or motor disabilities, website developers and web content developers often implement digital technologies without regard to whether those technologies can be accessed by individuals with disabilities. This is notwithstanding the fact that accessible technology is both readily available and cost effective.

16.    Individuals with vision related disabilities may access websites using screen reader programs that convert text to audio. Screen reader software provides the primary method by which a blind person may independently use the Internet. Unless websites are designed to be read by screen reader software, individuals suffering visual impairments are unable to fully access websites and the content and services they make available.

### I.    Alfred Dunner, Inc.'s Online Content

17.    Alfred Dunner sells its products to consumers via its Website. The Website provides detailed product information, complete with photographs and product descriptions. Consumers may use the Website to arrange for home delivery.

18.    In addition to selling products in its online marketplace, Alfred Dunner's Website allows consumers to create personal accounts, contact customer service, and get 20% off by joining Alfred Dunner's email mailing list.

19.    Consumers may use the Website to connect with the Alfred Dunner on social media, using sites such as Facebook and Pinterest.

20.    The Website also includes important legal information like Alfred Dunner's Privacy and Shipping and Return Policies.

## II.    Harm to Plaintiff

21.    Plaintiff Gniewkowski has attempted to use Alfred Dunner's Website. Unfortunately, because of Alfred Dunner's failure to build its Website in a matter that is compatible with screen reader programs, she is unable to understand, and thus is denied the benefit of, much of the content and services she wishes to access or use.

22.    As a result of the access barriers she encountered with her screen reader, Ms. Gniewkowski is unable to browse and purchase the merchandise Alfred Dunner sells on its Website, nor use the Website's other features described above, with the same ease as can consumers who do not similarly rely on screen reader software to access online marketplaces.

23.    As a result of visiting Alfred Dunner's Website and from investigations performed on her behalf, Plaintiff is aware the Website includes at least the following barriers that deny individuals with visual impairments equal access to Alfred Dunner's online marketplace:

(a)    A text equivalent for every non-text element is not provided;

(b)    Alternatives that present information in a way that sight or hearing impaired visitors can use is not provided for audio-only or video-only pre-recorded media presentations;

(c)    Media presentations do not include corresponding alternatives for site impaired users, like an audio description of video content or a text equivalent;

(d)    Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

(e)    Color is used as the only visual means of conveying meaning;

(f)    Text cannot be resized up to 200 percent without assistive technology so that it may still be viewed without loss of content or functionality;

(g)      Not all functionality of the content is operable through a keyboard interface without requiring specific timings for individual keystrokes, except where the underlying function depends on the path of the user's movement;

(h)      If the content enforces a time limit, the user is not always able to extend, adjust or disable it unless the time limit is part of a real time activity or would invalidate the activity;

(i)      Web pages lack titles that describe their topic or purpose;

(j)      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

(k)      Changing the focus of any user interface component may automatically cause a change of context;

(l)      Changing the setting of any user interface component may automatically cause a change of context unless the user has been informed before using the component;

(m)      Labels or instructions are not always provided when content requires user input;

(n)      In content implemented using markup languages, elements do not always have complete start and end tags, are nested according to their specifications, may contain duplicate attributes, and IDs are not always unique; and

(o)      The name and role of all UI elements cannot be programmatically determined; things that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

24.      These barriers, and others, have denied Plaintiff full and equal access to all of the services the Website offers, and now deter her from attempting to use the Website. Still, Plaintiff

would like to, and intends to, attempt to access Alfred Dunner's Website in the future. Plaintiff's disabilities, and the challenge of traveling to and shopping in traditional brick-and-mortar retailers as a result of them, make it particularly likely they will return to the Website in the future to purchase goods from the comfort of her home, or testing the Website for compliance.

25.     If the Website were accessible, *i.e.* if Alfred Dunner removed the access barriers described above, Plaintiff could independently shop for and research products via Alfred Dunner's Website.

26.     Though Alfred Dunner has centralized policies regarding the maintenance and operation of its Website, Alfred Dunner has never had a plan or policy that is reasonably calculated to make its Website fully accessible to, and independently usable by, individuals with vision related disabilities. As a result, the complained of access barriers are permanent in nature and likely to persist.

27.     The law requires that Alfred Dunner reasonably accommodate Plaintiff's disabilities by removing these existing access barriers. Removal of the barriers identified above is readily achievable and may be carried out without much difficulty or expense.

28.     Plaintiff's above request for injunctive relief is consistent with the work performed by the United States Department of Justice, Department of Transportation, and U.S. Architectural and Transportation Barriers Compliance Board (the "Access Board"), all of whom have relied upon or mandated that the public-facing pages of websites comply with an international compliance standard known as Web Content Accessibility Guidelines version 2.0 AA ("WCAG 2.0 AA"), which is published by an independent third party known as the Worldwide Web Consortium ("W3C"). *Available at* https://www.w3.org/ (last visited December 29, 2017).

29.    Plaintiff has been, and in the absence of an injunction will continue to be, injured by Alfred Dunner's failure to provide its online content and services in a manner that is compatible with screen reader technology.

### III.    Alfred Dunner's Knowledge of Website Accessibility Requirements

30.    Alfred Dunner has long known that screen reader technology is necessary for individuals with visual disabilities to access its online content and services, and that it is legally responsible for providing the same in a manner that is compatible with these auxiliary aids.

31.    Indeed, as the Disability Rights Section reaffirmed in a 2015 Statement of Interest before the United States District Court for the District of Massachusetts, it has been a "longstanding position" of the Department of Justice "that the ADA applies to websites of public accommodations." *See National Association of the Deaf v. Massachusetts Institute of Technology*, No. 3:15-cv-300024-MGM, DOJ Statement of Interest in Opp. To Motion to Dismiss or Stay, Doc. 34, p. 4 (D. Mass. Jun. 25, 2015) ("MIT Statement of Interest"); *see also National Association of the Deaf. v. Harvard University*, No. 3:15-cv-30023-MGM, DOJ Statement of Interest of the United States of America, Doc. 33, p.4 (D. Mass. Jun. 25, 2015) ("Harvard Statement of Interest").

### IV.    The Parties have No Administrative Remedies to Pursue.

32.    There is no DOJ administrative proceeding that could provide Plaintiff with Title III injunctive relief.

33.    While DOJ has rulemaking authority and can bring enforcement actions in court, Congress has not authorized it to provide an adjudicative administrative process to provide Plaintiff with relief.

34.     Plaintiff alleges violations of existing and longstanding statutory and regulatory requirements to provide auxiliary aids or services necessary to ensure effective communication, and courts routinely decide these types of effective communication matters.

35.     Resolution of Plaintiff's claims does not require the Court to unravel intricate, technical facts, but rather involves consideration of facts within the conventional competence of the courts, *e.g.* (a) whether Alfred Dunner offers content and services on its Website, and (b) whether Plaintiff can access the content and services.

**SUBSTANTIVE VIOLATION**
**(Title III of the ADA, 42 U.S.C. § 12181 *et seq.*)**

36.     The assertions contained in the previous paragraphs are incorporated by reference.

37.     Alfred Dunner's Website is a place of public accommodation within the definition of Title III of the ADA, 42 U.S.C. § 12181(7).

38.     In the broadest terms, the ADA prohibits discrimination on the basis of a disability in the full and equal enjoyment of goods and services of any place of public accommodation. 42 U.S.C. § 12182(a). Thus, to the extent Alfred Dunner does not provide Plaintiff with full and equal access to its Website, it has violated the ADA.

39.     In more specific terms, Title III of the ADA imposes statutory and regulatory requirements to ensure persons with disabilities are not excluded, denied services, segregated or otherwise treated differently than other individuals as a result of the absence of auxiliary aids and services. 42 U.S.C. § 12182(b)(2)(A); 28 C.F.R. §§ 36.303(a), (c). Under these provisions, public accommodations must furnish appropriate auxiliary aids and services that comply with their effective communication obligations. Id.; see also MIT Statement of Interest, p. 4; Harvard Statement of Interest, p. 4.

40.     Auxiliary aids and services are necessary when their absence effectively excludes an individual from participating in or benefiting from a service, or fails to provide a like experience to the disabled person.

41.     Auxiliary aids and services include, but are not limited to, audio recordings, screen reader software, magnification software, optical readers, secondary auditory programs, large print materials, accessible electronic and information technology, other effective methods of making visually delivered materials available to individuals who are blind or have low vision, and other similar services and actions.  28 C.F.R. §§ 36.303(b)(2), (4).

42.     In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability.  28 C.F.R. §§ 36.303(c)(1)(ii).

43.     By failing to provide its Website's content and services in a manner that is compatible with auxiliary aids, Alfred Dunner has engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination, as defined by Title III, including without limitation:

(a)     denying individuals with visual disabilities opportunities to participate in and benefit from the goods, content, and services available on Alfred Dunner's Website;

(b)     affording individuals with visual disabilities access to the online marketplace at Alfred Dunner's Website that is not equal to, or effective as, that afforded others;

(c)     utilizing methods of administration that (i) have the effect of discriminating on the basis of disability; or (ii) perpetuate the discrimination of others who are subject to common administrative control;

(d)      denying individuals with visual disabilities effective communication, thereby excluding or otherwise treating them differently than others; and/or

(e)      failing to make reasonable modifications in policies, practices, or procedures where necessary to afford its services, privileges, advantages, or accommodations to individuals with visual disabilities.

44.      Alfred Dunner has violated Title III by, without limitation, failing to make its Website's services accessible by screen reader programs, thereby denying individuals with visual disabilities the Website's benefits, providing them with benefits that are not equal to those it provides others, and denying them effective communication.

45.      Alfred Dunner has further violated Title III by, without limitation, utilizing administrative methods, practices, and policies that allow its Website to be made available without consideration of consumers who can only access the company's online goods, content, and services with screen reader programs.

46.      Making its online goods, content, and services compatible with screen reader programs does not change the content of Alfred Dunner's Website or result in making the Website different, but rather enables individuals with visual disabilities to access the Website Alfred Dunner already provides. See MIT Statement of Interest, p. 20; Harvard Statement of Interest, p. 20.

47.      Alfred Dunner's ongoing and continuing violations of Title III have caused, and in the absence of an injunction will continue to cause, harm to Plaintiff and other individuals with visual disabilities.

48.      Plaintiff's claims are warranted by existing law or by non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law.

49.     Pursuant to 42 U.S.C. § 12188 and the remedies, procedures and rights set forth and incorporated therein, Plaintiff requests relief as set forth below.

**<u>PRAYER FOR RELIEF</u>**

WHEREFORE, Plaintiff prays for:

50.     A Declaratory Judgment that at the commencement of this action Defendant was in violation of the specific requirements of Title III of the ADA described above, and the relevant implementing regulations of the ADA, in that Defendant took no action that was reasonably calculated to ensure that its Website is fully accessible to, and independently usable by, individuals with visual disabilities;

51.     A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 CFR § 36.504(a) which directs Defendant to take all steps necessary to bring its Website into full compliance with the requirements set forth in the ADA, and its implementing regulations, so that its Website is fully accessible to, and independently usable by, blind individuals, and which further directs that the Court shall retain jurisdiction for a period to be determined to ensure that Defendant has adopted and is following an institutional policy that will in fact cause Defendant to remain fully in compliance with the law—the specific injunctive relief requested by Plaintiff is described more fully in paragraph 8 above.

52.     Payment of costs of suit;

53.     Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 CFR § 36.505; and

54.     The provision of whatever other relief the Court deems just, equitable and appropriate.

Dated: January 2, 2018                      Respectfully Submitted,


                                            */s/ Benjamin J. Sweet*
                                            Benjamin J. Sweet (PA Bar No. 87338)
                                            bsweet@carlsonlynch.com
                                            Kevin W. Tucker (PA Bar No. 312144)
                                            ktucker@carlsonlynch.com
                                            CARLSON LYNCH SWEET KILPELA
                                            & CARPENTER, LLP
                                            1133 Penn Avenue, 5th Floor
                                            Pittsburgh, PA 15222
                                            Phone: (412) 322.9243
                                            Fax: (412) 231.0246

                                            *Counsel for Plaintiff Rachel Gniewkowski*